1  **LAW OFFICES OF RONALD A. MARRON**
   RONALD A. MARRON (SBN 175650)
2  *ron@consumersadvocates.com*
   MICHAEL T. HOUCHIN (SBN 305541)
3  *mike@consumersadvocates.com*
   651 Arroyo Drive
4  San Diego, California 92103
   Telephone: (619) 696-9006
5  Facsimile: (619) 564-6665
   [additional counsel listed on signature page]
6  *Attorneys for Plaintiff and the Proposed Class*

7

8  **UNITED STATES DISTRICT COURT**
   **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

9

| | |
|---|---|
| HOWARD CLARK, on behalf of himself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>JUSTIN'S NUT BUTTER, LLC, a Delaware Limited Liability Company,<br><br>Defendant. | Case No:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

**INTRODUCTION**

1. The average consumer spends a mere 13 seconds making an in-store purchasing decision, or between 10 to 19 seconds for an online purchase.[1] That decision is heavily dependent on a product's packaging, and particularly the package dimensions: "Most of our studies show that 75 to 80 percent of consumers don't even bother to look at any label information, no less the net weight . . . . Faced with a large box and a smaller box, both with the same amount of product inside . . . consumers are apt to choose the larger box because they think it's a better value."[2] This lawsuit charges Defendant with intentionally packaging its Justin's Peanut Butter Cup product (the "Product") in opaque containers that contain approximately 40% empty space. Most consumers purchased the Product without knowing that the containers were substantially empty.

2. Howard Clark ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint for injunctive relief and any other available legal or equitable remedies, resulting from the unlawful and deceptive actions of Justin's Nut Butter, LLC ("Defendant" or "Justin's") with respect to the packaging of the Product. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

3. Plaintiff purchased the Product manufactured by Defendant once in October 2018 in San Francisco, California. In particular, Plaintiff purchased the Product at a Target in San Francisco, California. Plaintiff purchased the Product for the purpose of enjoying its contents by consuming (eating) the food item. Plaintiff was surprised when he opened the item and saw that the container had **nearly 40% empty space**, or slack fill.

---

[1] http://www.nielsen.com/us/en/insights/news/2015/make-the-most-of-yourbrands-20-second-window.html (citing the Ehrenberg-Bass Institute of Marketing Science's report "Shopping Takes Only Seconds…In-Store and Online").

[2] http://www.consumerreports.org/cro/magazinearchive/2010/january/shopping/pro duct-packaging/overview/product-packaging-ov.htm (quoting Brian Wansink, professor and director of the Cornell Food and Brand Lab, who studies shopping behavior of consumers).

1

CLASS ACTION COMPLAINT

4. Defendant's conduct violates consumer protection and labeling laws.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(l)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. See 28 U.S.C. § 1332(d)(2).

6. The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

7. The Court has personal jurisdiction over Defendant because its Justin's Mini Peanut Butter Cups Product is advertised, marketed, distributed and sold through the State of California; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in the State of California; Defendant is authorized to do business in the State of California; and Defendant has sufficient minimum contacts with the State of California, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial activity with the State of California.

8. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred within this judicial district, Defendant has marketed and sold the Justin's Product at issue in this action in this judicial district, and it conducts business within this judicial district.

**PARTIES**

9. Plaintiff Howard Clark is a citizen of the State of California and resides in San Francisco, California. Plaintiff purchased the Product once in October 2018 in San Francisco, California at the Target located on 225 Bush Street #100, San Francisco, CA 94104.

10. Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant Justin's Nut Butter, LLC, is a Delaware corporation which has its principal place of business located in Boulder, Colorado. Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant, at all times relevant, conducted business in the State of California and within the

County of San Francisco. Justin's is registered with the California Secretary of State under entity number 201312110152.

## FACTUAL ALLEGATIONS

### California Law Prohibits Non-functional Slack-Fill

11. Many federal and state consumer protection and labeling laws prohibit deceptive packaging and labeling of products and commodities. In California, the Fair Packaging and Labeling Act ("CFPLA") "is designed to protect purchasers of any commodity within its provisions against deception or misrepresentation. Packages and their labels should enable consumers to obtain accurate information as to the quantity of the contents and should facilitate value comparisons." (California Business & Professions Code § 12601.)

12. In this context, the CFPLA provides: "No food containers shall be made, formed, or filled as to be misleading." (California Business & Professions Code § 12606.2(b).) "A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill." (California Business & Professions Code § 12606.2(c).) Section 12606.2(c) defines "slack fill" as "the difference between the actual capacity of a container and the volume of product contained therein." Similarly, section 12606.2(c) defines "nonfunctional slack fill" as "the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of the following:

(1) Protection of the contents of the package.

(2) The requirements of machines used for enclosing the contents of the package.

(3) Unavoidable product settling during shipping and handling.

(4) The need for the package to perform a specific function, such as where packaging plays a role in the preparation or consumption of a food, if that function is inherent to the nature of the food and is clearly communicated to consumers.

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value that is both significant in proportion to the value of the product and independent of its function to hold the food, such as a gift product consisting of a food or

foods combined with a container that is intended for further use after the food is consumed or durable commemorative or promotional packages.

(6) Inability to increase the level of fill or to further reduce the size of the package, such as where some minimum package size is necessary to accommodate required food labeling exclusive of any vignettes or other nonmandatory designs or label information, discourage pilfering, facilitate handling, or accommodate tamper-resistant devices." (California Business & Professions Code § 12606.2(c)(1)-(6).)

13. None of the above safe-harbor provisions applies to the Product. Defendant intentionally incorporated non-functional slack-fill in its packaging of the Product. Given the materiality of the non-functional slack fill to reasonable consumers, the packaging is per se illegal, and reliance upon the misbranded packaging by absent class members is presumed.

**Defendant's Product Contains Non-Functional Slack-Fill**

14. Defendant's Product is, and at all relevant times was, sold in non-transparent containers. The container has significant slack-fill, as shown below.




4

CLASS ACTION COMPLAINT

15. Nearly 40% of the interior of the Product's container is comprised of empty space, or non-functional slack-fill.

16. Judging from the sizes of the container, a reasonable consumer would expect them to be substantially filled with product. Consumers are misled into believing that they are purchasing substantially more Justin's peanut butter cup product than they receive.

17. There is no functional reason for including so much slack-fill in the Justin's Product.

18. Plaintiff is informed and believes, and upon such information and belief alleges, that consumers have relied upon, and are continuing to rely upon, the size of the Justin's Product container as the basis for making purchasing decisions. Consumers believe that the Justin's Product container is substantially full because they cannot see the actual contents within the nontransparent container.

19. Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant is selling and will continue to sell the Justin's Product using the blatantly deceptive and misleading slack-filled container.

20. The container (1) does not allow consumers to fully view its contents; and (2) contains nonfunctional slack fill. As such, the packaging is per se illegal.

21. Class Members did not know, and had no reason to know, that the Product illegally contained non-functional slack-fill.

22. Defendant's Product's packaging size is a material factor in Plaintiff's and absent Class Members' decisions to purchase the Product. Based on Defendant's illegal packaging, Plaintiff and Class Members expected to receive more Product than was actually being sold.

23. As a result of Defendant's illegal packaging, thousands of consumers purchased the Product and have been damaged by Defendant's illegal conduct.

24. Plaintiff and the Class Members will be unable to rely on the Product's advertising as long as the Product's packaging continues to contain nonfunctional slack-fill, and so Plaintiff and the Class Members will not purchase the Product in the future, although they would like to do so, unless and until Defendant takes corrective action.

25. Defendant's packaging and advertising of the Justin's Product violates the CFPLA, as set forth above.

**Plaintiff Relied on Defendant's Misleading and Deceptive Conduct and Was Injured as a Result**

26. The types of misrepresentations made, as described herein, were considered by Plaintiff and Class Members (as would be considered by a reasonable consumer) when deciding to purchase the Justin's Product. Reasonable consumers, including Plaintiff and Class Members, attached importance to whether Defendant's Justin's Product was misbranded, i.e., not legally salable, or capable of legal possession, and/or contain non-functional slack-fill.

27. Plaintiff and the Class Members did not know, and had no reason to know, that the Justin's Product contained non-functional slack-fill.

28. Defendant's Product packaging was a material factor in Plaintiff's and the Class Members' decisions to purchase the Justin's Product. Based on Defendant's product packaging, Plaintiff and the Class Members believed that they were getting more Justin's Mini Peanut Butter Cups Product than was actually being sold. Had Plaintiff known Defendant's packaging was slack-filled, he would not have bought the slack-filled Product.

29. Plaintiff and the Class Members paid the full price of the Justin's Product and received less Product than they anticipated and expected due to the non-functional slack-fill in the Product.

30. There is no practical reason for the non-functional slack-fill used to package the Justin's Product other than to mislead consumers as to the actual volume of the Justin's Product being purchased by consumers.

31. Because of Defendant's misrepresentations, Plaintiff and thousands of others throughout California purchased the Product. Plaintiff and the Class (defined below) have been damaged by Defendant's deceptive and unfair conduct.

**CLASS ACTION ALLEGATIONS**

32. Plaintiff brings this action as a class action on behalf of himself and all others similarly situated (the "Class") pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

33. The nationwide Class is defined as follows:

> All U.S. citizens who made retail purchases of Justin's Mini Peanut Butter Cup Product during the applicable limitations period up to and including final judgment in this action.

34. The California sub-Class is defined as follows:

All California citizens who made retail purchases of Justin's Mini Peanut Butter Cup Product during the applicable limitations period up to and including final judgment in this action.

35. The proposed Class excludes current and former officers and directors of Defendant, Members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which it has or has had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

36. Plaintiff reserves the right to revise the Class definition based on facts learned in the course of litigating this matter.

37. The Product sold by Defendant suffer from illegal product bottling, labeling and nonfunctional slack-fill.

38. This action has been brought and may properly be maintained as a class action against Defendant. While the exact number and identities of other Class Members are unknown to Plaintiff at this time, Plaintiff is informed and believes that there are hundreds of thousands of Members in the Class. Based on sales of the Product it is estimated that the Class is composed of more than 10,000 persons. Furthermore, even if subclasses need to be created for these consumers, it is estimated that each subclass would have thousands of Members. The Members of the Class are so numerous that joinder of all Members is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

39. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class as all Members of the Class are similarly affected by Defendant's wrongful conduct, as detailed herein.

40. Plaintiff will fairly and adequately protect the interests of the Members of the Class in that he has no interests antagonistic to those of the other Members of the Class. Plaintiff has retained experienced and competent counsel.

41. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class Members may be relatively small, the expense and burden of individual litigation makes it impracticable for the Members of the Class to

individually seek redress for the wrongful conduct alleged herein. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action. If Class treatment of these claims were not available, Defendant would likely unfairly receive thousands of dollars or more in improper revenue.

42. Common questions of law and fact exist as to all Members of the Class and predominate over any questions solely affecting individual Members of the Class. Among the common questions of law and fact applicable to the Class are:

   i. Whether Defendant labeled, packaged, marketed, advertised and/or sold the Product using illegal packaging and labeling;

   ii. Whether Defendant's actions constitute violations of the CFPLA, California Business & Professions Code § 12606.2;

   iii. Whether Defendant omitted and/or represented that its Product has quantities that they do not have;

   iv. Whether Defendant's labeling, packaging, marketing, advertising and/or selling of the Product constituted a fraudulent, unfair, or unlawful business act or practice and whether Defendant engaged in unfair, deceptive, untrue or misleading advertising;

   v. Whether Defendant's packaging of the Product constituted nonfunctional slack-fill;

   vi. Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent such conduct in the future;

   vii. Whether the Members of the Class have sustained damages as a result of Defendant's wrongful conduct;

   viii. The appropriate measure of damages and/or other relief; and

   ix. Whether Defendant should be enjoined from continuing its unlawful practices.

43. The class is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude his maintenance of this matter as a Class action.

44. The prosecution of separate actions by Members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all Members of the Class, although certain Class Members are not parties to such actions.

45. Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

46. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

## FIRST CAUSE OF ACTION

## VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT,

### (Cal. Civ. Code §§ 1750, *et seq.*)

47. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

48. Plaintiff brings this claim individually and on behalf of the Class for Defendant's violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code 1761(d).

49. Plaintiff and the Class Members are consumers who purchased the Product for personal, family or household purposes. Plaintiff and the Class Members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

50. The Product that Plaintiff and other Class Members purchased from Defendant is amongst the "goods" within the meaning of Cal. Civ. Code § 1761(a).

51. Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

52. Defendant violated California law because the Product is packaged in containers made, formed or filled to contain non-functional slack-fill.

53. California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(5) of the CLRA, because Defendant's conduct constitutes illegal and unlawful competition.

54. Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9), because Defendant's conduct constitutes illegal and unfair methods of competition.

55. Plaintiff and the Class relied upon the size of the Product's packaging in making their purchases of the Product. In addition, given the materiality of Defendant's misrepresentations, absent Class Members are entitled to a presumption of reliance.

56. Plaintiff and the Class lost money as a result of Defendant's actions because: (a) they would not have purchased the Product on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a higher price for the Defendant's Product due to Defendant's misrepresentations; and (c) Defendant's Product did not have the quantities as represented.

57. On or about October 10, 2018, prior to filing this action, Plaintiff sent a CLRA notice letter to Defendant which complies with California Civil Code 1782(a). Plaintiff sent Justin's Nut Butter, LLC, individually and on behalf of the proposed Class, a letter via Certified Mail, advising Defendant that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.

58. Wherefore, Plaintiff seeks injunctive relief for Defendant's violations of the CLRA. If Defendant fails to take the corrective action detailed in Plaintiff's CLRA letter within thirty days of the date of the letter, then Plaintiff will seek leave to amend his complaint to add a claim for damages under the CLRA.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE UNFAIR COMPETITION LAW

**(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

59. The foregoing paragraphs are alleged herein and are incorporated herein by reference.

60. Plaintiff brings this claim individually and on behalf of the Members of the Class for Defendant's violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL").

61. The UCL provides, in pertinent part: "[U]nfair competition shall mean and include unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ."

62. Defendant violated California law because the Product is packaged in containers made, formed or filled as to be misleading and that contain non-functional slack-fill and because they are intentionally packaged to prevent the consumer from being able to fully see their contents.

### "Unlawful" Prong

63. Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating the CFPLA, California Business & Professions Code § 12601 *et seq*.

64. Specifically, Defendant violated section 12606.2(b) and (c) of the Business and Professions Code by packaging the Product in nonconforming type containers. Said non-conforming packages contained extra space by volume, in the interior of the container. The extra space provided no benefit to the contents of the packaging and misled consumers. In addition, Defendant packaged the Product in containers made, formed, or filled as to be misleading to a potential customer as to the actual size and filling of the package with Defendant's Product.

### "Unfair" Prong

65. Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's advertising is of no benefit to consumers. The public policy is tethered to a specific statutory provision. *See* Cal. Bus. & Prof. Code §§ 12606.2(b) and (c).

**"Fraudulent" Prong**

66. Defendant violated the "fraudulent" prong of the UCL, by misleading Plaintiff and the Class to believe that the Product contained more content than it actually contained and that such packaging and labeling practices were lawful, accurate, true, and not intended to deceive or mislead consumers.

67. Plaintiff and the Class Members are not sophisticated experts about the corporate branding, labeling, and packaging practices of the Product. Plaintiff and the Class acted reasonably when they purchased the Product based on their belief that Defendant's representations were true and lawful.

68. Plaintiff and the Class lost money as a result of Defendant's UCL violations because: (a) they would not have purchased the Product on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a higher price for the Defendant's Product due to Defendant's misrepresentations; and (c) Defendant's Product did not have the quantities as represented.

69. The conduct of Defendant as set forth above demonstrates the necessity for granting injunctive relief restraining such and similar acts of unfair competition pursuant to California Business and Professions Code. Unless enjoined and restrained by order of the court, Defendant will retain the ability to, and may engage in, said acts of unfair competition, and misleading "advertising." As a result, Plaintiff and the Class are entitled to injunctive and monetary relief in the form of restitution under Cal. Bus. & Prof. Code § 17203.

70. Plaintiff has assumed the responsibility of enforcement of the laws and public policies specified herein by suing on behalf of herself and other similarly-situated Class Members. Plaintiff's success in this action will enforce important rights affecting the public interest. Plaintiff will incur a financial burden in pursuing this action in the public interest. An award of reasonable attorneys' fees to Plaintiff is thus appropriate pursuant to California Code of Civil Procedure § 1021.5.

**THIRD CAUSE OF ACTION**

**VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW**

**(Cal. Bus. & Prof. Code §§ 17500, *et seq*.)**

71. The foregoing paragraphs are alleged herein and are incorporated herein by reference.

72. Plaintiff brings this claim individually and on behalf of the Members of the Class for Defendant's violations of California's False Advertising Competition Law, Cal. Bus. & Prof. Code § 17500, *et seq.* (the "FAL").

73. Under the FAL, the State of California makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

74. Defendant engaged in a scheme of offering the Product misbranded for sale to Plaintiff and the Class Members by way of packaging the Product in containers made, formed or filled as to be misleading and which contain nonfunctional slack-fill. Such practice misrepresented the content and quantity of the misbranded Product. Defendant's advertisements were made in California and come within the definition of advertising as contained in Bus. & Prof Code §§ 17500, *et seq.* in that the product packaging was intended as inducements to purchase Defendant's Product. Defendant knew its conduct was unauthorized, inaccurate, and misleading.

75. Defendant violated California law because the Product is packaged in containers made, formed or filled as to be misleading and which contain non-functional slack-fill and because they are intentionally packaged to prevent the consumer from being able to fully see their contents.

76. Defendant violated Section 17500, *et seq.* by misleading Plaintiff and the Class to believe that the Product's packaging contains more product than it, in fact, contains, as described herein.

77. Defendant knew or should have known, through the exercise of reasonable care that the Product was and continues to be misbranded, and that its representations about the quantities of the Product was untrue and misleading.

78. Plaintiff and the Class Members lost money as a result of Defendant's FAL violations because: (a) they would not have purchased the Product on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a higher price for the Product due to Defendant's misrepresentations; and (c) the Product did not

have the benefits, or quantities as promised, and as a result the Class is entitled to monetary and injunctive relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against Defendant as follows:

(A) For an Order determining that this action may be maintained as a class action, and certifying the Class as requested herein;

(B) For an Order declaring that Defendant's conduct violated the CLRA, Cal. Civ. Code § 1750, *et seq*., and awarding (i) injunctive relief, (ii) actual damages, (iii) punitive damages, (iv) costs of suit, and (iii) reasonable attorneys' fees;

(C) For an Order declaring that Defendant's conduct violated the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*, and FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*, and awarding (i) injunctive relief, (ii) restitution, (iii) prejudgment and post judgment interest; (iv) exemplary and/or punitive damages pursuant to Cal. Civ. Code § 3294, (v) costs of suit, and (iv) reasonable attorneys' fees pursuant to, *inter alia*, Cal. Code Civ. Proc § 1021.5;

(D) For injunctive relief as pleaded or as the Court may deem proper;

(E) For an order of restitution and all other forms of equitable monetary relief, as pleaded;

(F) For compensatory damages in amounts to be determined by the Court and/or jury;

(G) For punitive damages;

(H) For prejudgment interest on all amounts awarded;

(I) For an Order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit as pleaded pursuant to, *inter alia*, Cal. Civ. Code § 1780(e) and Cal. Civ. Proc. Code § 1021.5; and

(J) For such other and further relief as the Court deems just and proper.

### VIII.  JURY DEMAND

Plaintiff demands a trial by jury on all claims for damages. Plaintiff does not seek a jury trial for claims sounding in equity.

| | |
|---|---|
| DATED: October 10, 2018 | Respectfully Submitted, |

                        */s/ Ronald A. Marron*
                        Ronald A. Marron

**LAW OFFICES OF RONALD A. MARRON**
Ronald A. Marron
*ron@consumersadvocates.com*
Michael T. Houchin
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
Fax: (619) 564-6665

**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
SCOTT J. FERRELL (SBN 202091)
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
      Fax: (949) 706-6469

***Counsel for Plaintiff and the Proposed Class***

---

15

CLASS ACTION COMPLAINT